UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------X
                                                    :
JUAN CUEVAS

                    Petitioner,          : 10 Civ. 5959 (PAE) (GWG)
                                           98 Cr. 1053 (PAE)

        -v.-                             :
                                           REPORT AND RECOMMENDATION

UNITED STATES OF AMERICA                 :

                    Respondent.          :


-----------------------------------------------------------------X

**GABRIEL W. GORENSTEIN, UNITED STATES MAGISTRATE JUDGE**

        Juan Cuevas, currently an inmate at the Allenwood Federal Correctional Institution in

White Deer, Pennsylvania, has brought this petition for a writ of habeas corpus under 28 U.S.C.

§ 2255. On October 4, 2002, Cuevas pled guilty to a three-count indictment. He was originally

sentenced to 390 months of imprisonment. Following remand by the Second Circuit, his

sentence was reduced to 360 months. For the reasons set forth below, his petition should be

denied.

I.      BACKGROUND

        A.      Indictment, Arrest, and Guilty Plea

        Cuevas was indicted on September 29, 1998. See Indictment, filed Sept. 29, 1998

(Docket # 26 in 98 Cr. 1053). On April 15, 1999, Cuevas was charged in a superseding

indictment with the following offenses: (1) conspiracy to distribute and possess with intent to

distribute five kilograms or more of cocaine in violation of 21 U.S.C. §§ 812, 841(a)(1),

841(b)(1)(A); (2) conspiracy to commit money laundering in violation of 18 U.S.C.

§§ 1956(a)(1)(A)(i), 1956(a)(1)(B)(i), 1957(a); and (3) money laundering in violation of 18

U.S.C. §§ 1956(a)(1)(B)(i) and 1956(a)(2). See Indictment, filed Apr. 15, 1999 (Docket # 57 in

98 Cr. 1053). At the time of the indictments, Cuevas was in the Dominican Republic. He was extradited to the United States pursuant to the Convention for the Mutual Extradition of Fugitives from Justice, U.S.-Dom. Rep., June 19, 1909, 36 Stat. 2468 (the "Extradition Treaty"), and the United Nations Convention Against Illicit Traffic in Narcotic Drugs and Psychotropic Substances, art. 6, Dec. 20, 1988, S. Treaty Doc. No. 101-4, 28 I.L.M. 493 (1989) (the "U.N. Convention"). Cuevas arrived in New York on or about July 6, 2002. See Presentence Investigation Report, dated Feb. 7, 2003 (annexed to Letter from Carrie H. Cohen to the Honorable Gabriel W. Gorenstein, dated Nov. 4, 2011 (Docket # 232 in 98 Cr. 1053) ("Gov't Resp.")) ("PSR") ¶ 51.

On October 4, 2002, Cuevas, along with a co-defendant, pled guilty before Judge Jed S. Rakoff to Counts One, Two, and Three of the Superseding Indictment. See Transcript of Plea Hearing, dated Oct. 4, 2002 (annexed as Supplemental Appendix ("Supp. App'x") to Gov't Resp.) ("Plea Tr.") 2-28. The Government provided Cuevas's attorney with a letter pursuant to United States v. Pimentel, 932 F.2d 1029, 1034 (2d Cir. 1991), stating the Government's view on the prison sentence called for by the Sentencing Guidelines. Plea Tr. 17.

During the plea allocution, Cuevas stated that he was satisfied with his attorney's representation and had discussed the guilty plea with him. See id. 9. Cuevas also stated that he understood that by pleading guilty he was waiving his right to a trial. Id. 11-13. Judge Rakoff reviewed the elements of each criminal charge and the maximum and mandatory punishments for each. Id. 13-16. Judge Rakoff referred to the Pimentel letter and noted that the Government had stated its view that the Sentencing Guidelines range was 324-435 months. Id. 17-18. The Government said that there were no agreements or promises made to Cuevas regarding his sentence except that the Government had agreed to accept a transfer from the Southern District

of Florida of an indictment that was pending against Cuevas, and that if the transfer occurred, the Government would recommend that any sentence from the Florida case run concurrently with the instant case.  Id. 19-20.  In response to a question from Judge Rakoff, Cuevas acknowledged that no other promises had been made to him as to his sentence.  Id. 22.  Judge Rakoff also informed Cuevas that any other promise or prediction that had been made could be wrong, and Cuevas would be bound by his sentence.  Id.

In his allocution, Cuevas stated that he distributed drugs and laundered money.  Id. 23.  In response to questions from the court, Cuevas admitted that the distribution of drugs was done in connection with at least one other person and involved more than five kilograms of cocaine.  Id.  Cuevas also admitted that he engaged in transactions to conceal the proceeds of the drug trafficking.  Id. 24.  The Court thereafter held a two-day hearing pursuant to United States v. Fatico, 603 F.2d 1053 (2d Cir. 1979), cert. denied, 444 U.S. 1073 (1980), after which the Court found that Cuevas was a member of a conspiracy that distributed 150 kilograms of cocaine; that Cuevas knew a firearm was used during the commission of the drug conspiracy; and that Cuevas was the leader of the drug conspiracy.  See Sentencing Transcript, dated Feb. 24, 2003 (annexed as Supp. App'x to Gov't Resp.) ("2/24/2003 Sent. Tr.") 2.

At the first sentencing hearing, Judge Rakoff  imposed a sentence of 390 months followed by five-years supervised release on Count 1 of the superseding indictment and concurrent terms of 20 years each on Counts 2 and 3.  See id. 42- 43.

B.      Direct Appeals and Remands

Cuevas appealed his sentence, arguing that his plea was not voluntary and his sentence was illegal because he had not been informed of, nor sentenced in compliance with, the extradition treaty under which he was brought to the United States, which he asserted had a

maximum penalty of thirty years' imprisonment.  See United States v. Cuevas, 112 F. App'x 806, 806-07 (2d Cir. 2004).  The Second Circuit found that the record was insufficient to determine "whether the United States and the Dominican Republic reached an agreement as to the sentence that could be imposed upon Cuevas."  Id. at 807.  Therefore, the Second Circuit remanded the case to the District Court to conduct an evidentiary hearing on the issue.  Id.

On remand, the District Court conducted hearings and received written submissions from the parties concerning Cuevas's extradition from the Dominican Republic to the United States.  See United States v. Cuevas, 402 F. Supp. 2d 504, 505 (S.D.N.Y. 2005) ("Cuevas II").  Judge Rakoff found that the United States never agreed to be bound by a thirty-year limitation on sentence, and only learned about the purported condition after taking custody of Cuevas and his co-defendant.  See id. at 506-07.  The Court also found that although the Dominican Republic was aware of Cuevas's sentence, it had failed to object.  Id. at 507.  Therefore, Judge Rakoff found that Cuevas's sentence should "remain as originally imposed."  Id.

Cuevas again appealed his sentence to the Second Circuit.  See United States v. Cuevas, 496 F.3d 256 (2d Cir. 2007) ("Cuevas III").  In its decision, the Second Circuit found that the District Court had not erred in finding that the conspiracy involved more than 150 kilograms of cocaine, in finding that Cuevas played a leadership role in criminal activity involving five or more participants, and in refusing to adjourn the sentencing until the related Florida indictment could be transferred.  See id. at 267-68.  Additionally, the Second Circuit affirmed the District Court's finding that Cuevas's 390 month sentence was not illegal, as the court was under no obligation to limit the sentence to 30 years.  Id. at 264.  It also rejected Cuevas's argument that his guilty plea was involuntary or uninformed.  Id.  However, the Second Circuit found that because "the District Court sentenced Cuevas prior to [United States v. Booker, 543 U.S. 220

4

(2005),] . . . it understandably but erroneously treated the Guidelines as mandatory." Cuevas III, 496 F.3d at 265. Therefore, in accordance with its prior ruling in United States v. Crosby, 397 F.3d 103 (2d Cir. 2005), the Second Circuit remanded the case to determine whether the District Court's "pre-Booker mandatory application of the Guidelines was plain error." Cuevas III, 496 F.3d at 265.

Judge Rakoff held a resentencing hearing on November 13, 2007. See Transcript of Sentencing Hearing, dated Nov. 13, 2007 (annexed to Gov't Resp.) ("RS Tr."). Judge Rakoff said that the issue at the resentencing hearing was "whether or not if [the Court] had understood at the time of the original sentence that the guidelines were not mandatory, whether [the Court] would have, under those circumstances, imposed a non-trivially different sentence." Id. 2. Judge Rakoff stated that had he been operating in a non-Guidelines context he might have given more weight to the extra difficulties Cuevas faced in prison due to his medical condition and the "aspects of the extradition that might have led the defendant to believe that he would receive a maximum of 360 months." Id. 17. Considering those factors, the Court said it would "err on the side of leniency and change the sentence to 360 months and will also, in issuing the new judgment, make sure that the supervised release, though it will total overall five years, does not exceed the statutory maximum on two of the counts which have a lesser maximum." Id. 18.

Cuevas filed a notice of appeal from his amended judgment of conviction. See Notice of Appeal, filed Nov. 20 & 26, 2007 (Docket ## 200 & 201 in 98 Cr. 1053). On June 30, 2009, the Second Circuit granted the Government's motion for summary affirmance. See Mandate, filed July 30, 2009 (Docket # 207 in 98 Cr. 1053).

C.    Habeas Petition

On August 6, 2010 Cuevas filed the instant petition seeking habeas corpus review of his

sentence pursuant to 28 U.S.C. § 2255. <u>See</u> Motion to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody, filed Aug. 6, 2010 (Docket # 1) ("Mot."). Prior to the Government's response, Cuevas filed a motion for permission to file an amended petition, which was granted on May 31, 2011. <u>See</u> Memorandum Endorsement, filed May 31, 2011 (Docket # 5). Cuevas's first amended petition was filed immediately thereafter. <u>See</u> Petitioner Juan Cuevas' First Amended Motion Under Title 28, United States Code, Section §2255, filed June 1, 2011 (Docket # 215 in 98 Cr. 1053) ("Am. Mot."). The Government submitted opposition papers, <u>see</u> Gov't Resp., to which Cuevas submitted a reply, <u>see</u> Petitioner Juan Cuevas' Reply to the Government's Response, dated Jan. 10, 2012 (Docket # 233 in 98 Cr. 1053) ("Reply").

The Government's initial opposition papers responded only to Cuevas's amended petition. Accordingly, on February 10, 2012, this Court issued an order directing the Government to reply to the issues raised in Cuevas's initial petition. <u>See</u> Order, filed Feb. 10, 2012 (Docket # 14). In response to that order, the Government submitted supplemental opposition papers. <u>See</u> Letter from Carrie H. Cohen to the Honorable Gabriel W. Gorenstein, dated Apr. 5, 2012 (Docket # 234 in 98 Cr. 1053). Cuevas submitted papers in response to the Government's supplemental opposition. <u>See</u> Petitioner's Response in Opposition to the Government's Supplemental Response to the Petitioner's Pro-Se Habeas Petition Pursuant to Title 28 U.S.C. Section 2255, dated Apr. 24, 2012 (Docket # 236 in 98 Cr. 1053) ("Supp. Reply"); Affidavit of Juan Cuevas in Support of His Opposition Response to the Government Response to Petitioner's 28 U.S.C. § 2255 Petition, dated Apr. 24, 2012 (Docket # 235 in 98 Cr. 1053) ("Cuevas Aff.").

II.    <u>APPLICABLE LAW</u>

    A.    <u>Law Governing Review of Section 2255 Petitions</u>

Section 2255(a) of Title 28 of the United States Code provides that:

> [a] prisoner in custody under sentence of a court established by Act of Congress claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack, may move the court which imposed the sentence to vacate, set aside or correct the sentence.

Relief under this statute is available "only for a constitutional error, a lack of jurisdiction in the sentencing court, or an error of law or fact that constitutes a fundamental defect which inherently results in [a] complete miscarriage of justice." Graziano v. United States, 83 F.3d 587, 590 (2d Cir. 1996) (citation and internal quotation marks omitted). "Because collateral challenges are in tension with society's strong interest in the finality of criminal convictions, the courts have established rules that make it more difficult for a defendant to upset a conviction by collateral, as opposed to direct, attack." Yick Man Mui v. United States, 614 F.3d 50, 53 (2d Cir. 2010) (internal quotation marks and citation omitted).

In considering a § 2255 petition, "[u]nless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief, the court shall . . . grant a prompt hearing thereon, determine the issues and make findings of fact and conclusions of law with respect thereto." 28 U.S.C. § 2255(b). On the other hand, "if it plainly appears from the motion, any attached exhibits, and the record of prior proceedings that the moving party is not entitled to relief, the judge must dismiss the motion." Puglisi v. United States, 586 F.3d 209, 213 (2d Cir. 2009) (internal quotation marks, alteration and citations omitted).

Case law reflects that a hearing is required in § 2255 cases "where the petitioner has made a plausible claim." Morales v. United States, 635 F.3d 39, 45 (2d Cir.) (addressing ineffective assistance of counsel claims) (citing Puglisi, 586 F.3d at 213) (quotation marks

omitted), cert. denied, 132 S. Ct. 562 (2011). To warrant a hearing, a petitioner's "application must contain assertions of fact that [the] petitioner is in a position to establish by competent evidence." United States v. Aiello, 814 F.2d 109, 113 (2d Cir. 1987); see also LoCascio v. United States, 395 F.3d 51, 57 (2d Cir. 2005) ("mere generalities or hearsay statements will not normally entitle the applicant to a hearing, since such hearsay would be inadmissible at the hearing itself") (internal quotation marks, punctuation, and citations omitted). The court must determine whether, viewing the record "in the light most favorable to the petitioner, the petitioner, who has the burden, may be able to establish at a hearing a prima facie case for relief." Puglisi, 586 F.3d at 213. If any material facts are in dispute and a petitioner can identify the available sources of the relevant evidence, a petitioner's claims will warrant a hearing. See id. at 213-14 (noting that "a petitioner may need only to identify available sources of relevant evidence rather than obtain it as in civil cases"). Nonetheless, "[a]iry generalities, conclusory assertions and hearsay statements will not suffice because none of these would be admissible evidence at a hearing." Aiello, 814 F.2d at 113-14. Furthermore, the Court is not required to presume the credibility of factual assertions "where the assertions are contradicted by the record in the underlying proceeding." Puglisi, 586 F.3d at 214.

However, even when a hearing is required, "'the statute itself recognizes that there are times when allegations of facts outside the record can be fully investigated without requiring the personal presence of the prisoner.'" Chang v. United States, 250 F.3d 79, 85 (2d Cir. 2001) (quoting Machibroda v. United States, 368 U.S. 487, 495 (1962)); see 28 U.S.C. § 2255(c) ("A court may entertain and determine such motion without requiring the production of the prisoner at the hearing."). Depending on the allegations in the petition, a "court may use methods under Section 2255 to expand the record without conducting a full-blown testimonial hearing." Chang,

250 F.3d at 86 (citing <u>Blackledge v. Allison</u>, 431 U.S. 63, 81-82 (1977)). Potential methods available to a court to supplement the record include "'letters, documentary evidence, and, in an appropriate case, even affidavits.'" <u>Id.</u> (quoting <u>Raines v. United States</u>, 423 F.2d 526, 529-30 (4th Cir. 1970) (footnote omitted)); <u>accord</u> <u>Pham v. United States</u>, 317 F.3d 178, 184 (2d Cir. 2003) (although court should not summarily dismiss a petition where factual disputes exist, the Second Circuit "permits a middle road of deciding disputed facts on the basis of written submissions") (internal quotation marks and citation omitted).

A full testimonial hearing should be conducted if it would "offer any reasonable chance of altering [the court's] view of the facts." <u>Chang</u>, 250 F.3d at 86. A petitioner's statement is "sufficiently credible to warrant a hearing where it is accompanied by some 'objective evidence.'" <u>Puglisi</u>, 586 F.3d at 216. Nonetheless, "[t]o obtain an evidentiary hearing, Petitioner must . . . set forth in an affidavit specific facts supported by competent evidence, raising detailed and controverted issues of fact which, if proved at a hearing, would entitle him to relief." <u>Boakye v. United States,</u> 2010 WL 1645055, at *6 (S.D.N.Y. Apr. 22, 2010) (citations omitted); <u>accord</u> <u>Petrucelli v. United States</u>, 2009 WL 4858081, at *13 n.1 (S.D.N.Y. Dec. 15, 2009) ("To warrant an evidentiary hearing, a habeas petitioner must raise detailed and controverted issues of fact supported by competent evidence."). Case law makes clear that a testimonial hearing need not take place if it would not succeed in providing additional material facts. <u>See</u>, <u>e.g.</u>, <u>Fermin v. United States</u>, 2012 WL 1632696, at *9 (S.D.N.Y. May 4, 2012) (petitioner's "failure to provide specific facts about any conversations to support his claim suggests that a testimonial hearing would do nothing to reveal such facts").

"It is within the district court's discretion to determine the scope and nature of a hearing." <u>Raysor v. United States</u>, 647 F.3d 491, 494 (2d Cir. 2011); <u>accord</u> <u>Campusano v.</u>

United States, 442 F.3d 770, 776 (2d Cir. 2006).

B.      Law Governing Ineffective Assistance of Counsel

"In order to prove ineffective assistance, [a petitioner] must show (1) 'that counsel's representation fell below an objective standard of reasonableness'; and (2) 'that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.'"  Pham, 317 F.3d at 182 (quoting Strickland v. Washington, 466 U.S. 668, 688, 694 (1984)); accord United States v. Brown, 623 F.3d 104, 112 (2d Cir. 2010); see also Massaro v. United States, 538 U.S. 500, 505 (2003) ("[A] defendant claiming ineffective counsel must show that counsel's actions were not supported by a reasonable strategy and that the error was prejudicial.").  In evaluating the first prong – whether counsel's performance fell below an objective standard of reasonableness – "'[j]udicial scrutiny . . . must be highly deferential,'" and the petitioner must overcome the "'presumption that, under the circumstances, the challenged action might be considered sound trial strategy.'"  Bell v. Cone, 535 U.S. 685, 698 (2002) (quoting Strickland, 466 U.S. at 689) (alteration in original); see Dunham v. Travis, 313 F.3d 724, 730 (2d Cir. 2002) (according counsel a presumption of competence).

To satisfy the prejudice requirement, the petitioner "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.  A reasonable probability is a probability sufficient to undermine confidence in the outcome."  Strickland, 466 U.S. at 694; accord Lynn v. Bliden, 443 F.3d 238, 247-48 (2d Cir. 2006), cert. denied, 549 U.S. 1257 (2007).  Concerning the second prong – whether there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different – the Second Circuit generally "requires some objective evidence

10

other than defendant's assertions to establish prejudice." Pham, 317 F.3d at 182 (citing United States v. Gordon, 156 F.3d 376, 380-81 (2d Cir. 1998) (per curiam)).

III.    DISCUSSION

Cuevas's petition may be liberally construed as raising the following claims: (1) that Judge Rakoff acted improperly in his questioning during the portion of the plea in which Cuevas was asked to give a factual allocution as to his conduct, see Mot. at 21-22; and (2) that Cuevas's counsel was ineffective with respect to his advice as to the plea of guilty, see id. at 1-20. We note that this first claim is not properly presented here as it is record-based. Thus, it was required to be raised on direct review, and not in the context of a motion to vacate under 28 U.S.C. § 2255, absent a showing of cause and prejudice, or actual innocence. See, e.g., Yick Man Mui, 614 F.3d at 54; Zhang v. United States, 506 F.3d 162, 166 (2d. Cir. 2007); Sapia v. United States, 433 F.3d 212, 217 (2d Cir. 2005). Cuevas has made no showing of cause for failure to raise this claim earlier. Nor has he made any showing of actual innocence.[1] In any event, Judge Rakoff's plea allocution was perfectly proper and thus this claim would have to be rejected on the merits.

As to the ineffective assistance of counsel claim, Cuevas advances several arguments in support of his claim that counsel's performance was objectively unreasonable. He argues that his counsel misadvised him as to the sentencing exposure he faced after trial, see Am. Mot. at

---

[1] Cuevas alleges in his motion papers, which are not signed under penalty of perjury, that he would not have pled guilty to the entire indictment but for his counsel's bad advice because he "was never guilty of the [w]hole indictment and was never in [p]ossession of any drugs." Mot. at 12-13. In his reply, Cuevas states that prejudice is "manifest" because "petitioner was and is actually innocent of the crime to which he was improperly induced to plead guilty to." Reply at 12-13. However, no evidence is provided in support of these claims of innocence. Moreover, these claims are directly contradicted by his plea allocution. Plea Tr. 23-24.

13, 15; failed to negotiate for a plea offer, see Mot. at 6-7; failed to investigate his case, see Am. Mot. 13, 15; and failed to inform him of the deportation consequences of pleading guilty, see Mot. at 14-15.

We begin by discussing whether counsel's representation fell below an objective standard of reasonableness.  Next, we discuss whether Cuevas has shown prejudice.

A.      Whether Counsel's Representation Fell Below an Objective Standard of Reasonableness

1.      Misadvice as to Sentencing Exposure

Cuevas argues that he was misadvised as to the potential sentence he faced after trial because trial counsel incorrectly informed Cuevas that he faced a life sentence after trial if he lost.  See Am. Mot. at 13, 15; Supp. Reply at 4.  Cuevas does not suggest that his guidelines sentence following conviction would have been anything other than life imprisonment.  Indeed, under Judge Rakoff's guidelines calculation, see 2/24/2003 Sent. Tr. 40, the sentence called for by the guidelines would have been life imprisonment had it not been for the 2-point reduction in the offense level for acceptance of responsibility.  Instead, Cuevas argues that a life term could not have been imposed due to the extradition treaty under which he had been brought to the United States.  See id. at 16.  He claims that "counsel took no steps to enforce [the treaty] w[]hich le[]d the court to believe [Cuevas] faced up to Life in Prison with the possibility of Parole."  Cuevas Aff. ¶ 5.  However, as later determined by the court, the 30-year limitation did not in fact apply to Cuevas.  See Cuevas II, 402 F. Supp. 2d at 506-07.  The inapplicability of this limitation had nothing to do with any failures of counsel but rather resulted from the lack of action by the Dominican Republic that would have been necessary to enforce the limitation.  Id. Thus, counsel did not misadvise Cuevas on this score.

Cuevas also makes a conclusory unsworn statement that his counsel told him "that he would only receive a total of 15 years [by pleading guilty], but when asked by the Judge to say that he was not promised any thing." <u>See</u> Mot. at 20. The Court finds this statement unworthy of belief as it is not only unsupported by any objective evidence but is also contradicted by Cuevas's other papers in which he states that "he pled guilty of the advise [sic] of counsel who led him to believe that there was a [p]lea agreement between counsel and the [p]rosecution that [he] would be receiving a sentence pursuant to the extradition treaty by which petitioner was brought before the court." Supp. Reply at 4. Additionally, Cuevas's assertion is undermined by the fact that he was sworn to respond truthfully to questions under oath and twice specifically agreed that he understood that he could not rely on any promises by anyone as to sentence but would instead be bound by the Court's sentence. Plea Tr. 18-19, 22. Thus, we do not credit Cuevas's unsworn assertions on these points in his motion papers. <u>See generally</u> <u>Blackledge</u>, 431 U.S. at 74 (defendant's "[s]olemn declarations in open court carry a strong presumption of verity"); <u>accord</u> <u>Adames v. United States</u>, 171 F.3d 728, 732 (2d Cir. 1999) (statements at allocution "are generally treated as conclusive in the face of the defendant's later attempt to contradict them") (citing <u>United States v. Gonzalez</u>, 970 F.2d 1095, 1101 (2d Cir. 1992) (no evidentiary hearing necessary where criminal defendant makes allegations that simply contradict his statements made under oath at plea allocution)).

### 2. Claim that Counsel Failed to Negotiate a More Favorable Plea Offer

Cuevas alleges that his counsel was deficient in allowing him to plead guilty to the entire indictment. <u>See</u> Mot. at 1, 6, 7, 12; Supp. Reply at 3, 4. He argues that "it is counsel['s] duty to find a charge[] contained within the accusatory instrument . . . that is agreeable to all the parties as a basis for negotiations." Mot. at 6. However, Cuevas has offered no evidence to suggest that

the Government was amenable to Cuevas's pleading guilty to anything other than the full indictment. Thus, because this claim rests only on speculation, it must be rejected. Moreover, "[t]he appropriateness of pursuing a plea agreement with the government is a strategic decision ordinarily not second-guessed by the court." United States v. Morel, 2010 WL 2900318, at *4 (S.D.N.Y. July 22, 2010); accord Lake v. United States, 465 F. App'x 33, 35 (2d Cir. 2012) (summary order) (counsel's "miscalculations regarding the Government's willingness to negotiate a more favorable deal or restore its initial plea offer represent, at best, strategic errors that are 'virtually unchallengeable.'") (quoting Strickland, 466 U.S. at 690).

On a related point, Cuevas alleges that counsel should have used the extradition treaty's alleged 30-year sentencing limit to negotiate a better sentence. See Am. Mot. at 15-17; Supp. Reply at 4-6. This argument must fail because it was found that the treaty's sentencing limitation did not apply to Cuevas. See Cuevas II, 402 F. Supp. 2d at 506-07.

### 3.  Claim that Counsel Failed to Investigate the Case

Cuevas also makes a conclusory argument that his counsel did not adequately investigate the case prior to advising Cuevas to plead guilty. See, e.g., Mot. at 13; Am. Mot at 18, 22; Supp. Reply at 8, 23. For example, he alleges that counsel "never reviewed the discovery in the case, and did not explore possible defenses." Am. Mot. at 18. However, Cuevas does not specify what facts counsel could have discovered during an investigation or review of the discovery that would have changed Cuevas's decision to plead guilty. Nor does he explain what possible witnesses or defenses his counsel could have discovered, let alone explain why any investigation or defenses would have led to a successful outcome. As one case has noted:

> Where allegations of ineffective assistance are conclusory and give no indication as to what exculpatory evidence may have been revealed by an investigation, a Sixth Amendment ineffective assistance claim based on failure to investigate is doomed. . . . Rather, a petitioner alleging that counsel's ineffectiveness was centered on a supposed failure to investigate has the burden of providing the court sufficiently precise information, that is, a comprehensive showing as to what the investigation would have produced.

Petrucelli, 2009 WL 4858081, at * 10 (citations and internal quotation marks omitted); accord Paez v. United States, 2012 WL 1574826, at * 2 (S.D.N.Y. May 3, 2012) (rejecting ineffective assistance claims where allegations were "conclusory"); United States. v. Figueroa , 2010 WL 2710514, at * 2 (W.D.N.Y. July 7, 2010) (claim dismissed because petitioner failed to establish how any uninvestigated matters or witnesses "would have been helpful and beneficial to him"). Accordingly, this aspect of Cuevas's claim is rejected.[2]

### 4. Deportation Consequences of Conviction

Cuevas also argues, see Mot. at 14-20, that his attorney erred in failing to advise him of the collateral immigration consequences of his conviction, pointing to Padilla v. Kentucky, 130 S. Ct. 1473 (2010), which held that defense counsel's failure to inform a non-citizen client that a guilty plea would result in his deportation amounted to ineffective assistance of counsel. Id. at 1483. The Court is doubtful that this rule could have retroactive effect in cases on collateral review for the reasons stated in a host of cases. See, e.g., United States v. Amer, 681 F.3d 211, 213-14 (5th Cir. 2012); Figuereo–Sanchez v. United States, 678 F.3d 1203, 1207-09 (11th Cir. 2012); Chaidez v. United States, 655 F.3d 684, 687-94 (7th Cir. 2011), cert. denied, 132 S. Ct.

---

[2] Cuevas also appears to argue that his plea was not knowing or intelligent because he "did not have a clear understanding of the criminal Justice Systems Process of Plea Negotiations." Mot. at 12. However, he does not explain how his knowledge was deficient, or what information concerning the plea and plea process his counsel should have told him. Accordingly, this claim must fail. See United States v. Gonzalez, 970 F.2d 1095, 1100 (2d Cir. 1992) (no hearing required where allegations "are simply conclusory").

2101 (2012); <u>Francisco v. Yelich</u>, 2012 WL 2367129, at *2 (E.D.N.Y. June 21, 2012); <u>Rosales v. Artus</u>, 2011 WL 3845906, at *8 (E.D.N.Y. Aug. 30, 2011); <u>Hamad v. United States</u>, 2011 WL 1626530, at *2 (E.D.N.Y. Apr. 28, 2011); <u>Ellis v. United States</u>, 806 F. Supp. 2d 538, 548-50 (E.D.N.Y. June 3, 2011); <u>but</u> <u>see</u> <u>United States v. Orocio</u>, 645 F.3d 630, 640-41 (3d Cir. 2011) (holding that Padilla announced an "old rule" under <u>Teague v. Lane</u>, 489 U.S. 288 (1989), and thus applies retroactively).[3]  It is not necessary to reach this question, however, because Cuevas has failed to show prejudice from counsel's alleged error as described in the next section.

B.    <u>Prejudice</u>

Cuevas's ineffective assistance claim cannot succeed because he has failed to show prejudice from his attorney's alleged ineffectiveness.  When an ineffective assistance of counsel claim is based upon ineffective representation during the plea process, "the defendant must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial."  <u>Hill v. Lockhart</u>, 474 U.S. 52, 59 (1985); <u>accord</u> <u>Premo v. Moore</u>, 131 S. Ct. 733, 743 (2011).  Thus, to obtain relief, "a petitioner must convince the court that a decision to reject the plea bargain would have been rational under the circumstances."  <u>Padilla</u>, 130 S. Ct. at 1485.  As one case has noted, "[t]his inquiry requires a fact-specific analysis that evaluates the weight of the evidence, the consequences of various legal options, and any circumstances that may affect a decision to plea[d]."  <u>Matos v. United States</u>, 2012 WL 569360, at *3 (S.D.N.Y. Feb. 16, 2012)

In his affidavit, Cuevas states that "he would not have pleaded guilty had he been

_____

[3]  To the extent Cuevas argues that his case is still on direct review, <u>see</u> Cuevas Aff. ¶¶ 10, 11, we reject this argument as the Court of Appeals' mandate summarily affirming the judgment of conviction has been filed in this court and has never been recalled or vacated.  <u>See</u> Docket # 207 in 98 Cr. 1053.

informed by counsel of [sic] Judge Rankoff [sic] of the possibility of deportation." Cuevas Aff. ¶ 8. In his memorandum of law, he states that he would not have pled guilty had he been advised as to the maximum penalty at trial and if counsel had conducted a pretrial investigation, see, e.g., Reply at 10, though these statements are not made under oath. But Cuevas's many submissions provide no independent basis for concluding that he would have gone to trial rather than plead guilty had he received the effective assistance of counsel that he claims was lacking here.

Second Circuit case law permits a court to reject a petitioner's assertion of prejudice in the absence of "some objective evidence" corroborating the defendant's assertions. Pham, 317 F.3d at 182 (citing Gordon, 156 F.3d at 380-81). In the case of a defendant who asserts that he would have accepted a plea rather than gone to trial had he been adequately advised, the Second Circuit has pointed to a "significant disparity" in possible sentences as providing such plausible objective evidence to support the petitioner's claim. See, e.g., Raysor, 647 F.3d at 494. In other words, a petitioner claiming that he would have pled guilty might show, in order to establish prejudice, that he faced a much longer sentence following a trial than was being offered in a plea.

In the situation of a party claiming that he would have gone to trial rather than pled guilty, the sentencing disparity works to undermine any such claim. After all, because of the sentencing advantages accorded those who accept responsibility for their actions by pleading guilty, a potential sentence after a trial conviction will almost always be longer than the sentence available following a plea. That was certainly true here as the charges against Cuevas carried a potential life sentence under the governing statute, see 21 U.S.C. § 841(b)(1)(A), and a life sentence was called for by the sentencing guidelines. Because in the usual case the only

17

advantage of going to trial over pleading guilty is the possibility of acquittal or conviction of lesser charges, courts have recognized that a petitioner must provide some basis for concluding that the chance of acquittal or conviction of lesser charges was sufficiently high that the petitioner would have rationally chosen to take the risk of conviction and a longer sentence that accompanies a trial rather than accept the certainty of conviction and a generally lesser sentence that is entailed by a guilty plea.  See, e.g., Holman v. Ebert, 2007 WL 4591718, at *5 (E.D.N.Y. Dec. 28, 2007) ("To satisfy the prejudice element of the Strickland test in the context of a guilty plea, petitioner would have to show that he would have been acquitted or at least received a shorter sentence after conviction."); Gelzer v. Fischer, 2007 WL 3539598, at *4 (E.D.N.Y. Nov. 14, 2007) (noting that Hill "implied that to demonstrate prejudice, petitioner must show not only that he would have gone to trial, but that he either would have been acquitted or, if convicted, sentenced to a lesser term than he received pursuant to his guilty plea"); United States v. Carraballo, 2001 WL 111284, at *6 (S.D.N.Y. Feb. 8, 2001) (rejecting a claim of ineffective assistance of counsel, where petitioner has "presented nothing to suggest either what exculpatory evidence would have been discovered through a more thorough defense investigation, nor that a rational factfinder would have found him not guilty"); accord United States v. Horne, 987 F.2d 833, 836 (D.C. Cir. 1993) (denying habeas petition in part because defendant "offered nothing to suggest that he would have succeeded if he had gone to trial"); United States v. Curry, 344 F. Supp. 2d 22, 27 (D.D.C. 2004) (inquiry into whether a defendant would have pleaded differently and gone to trial "is 'closely related to the objective prediction of whether the defense could succeed if the case went to trial'") (quoting United States v. Del Rosario, 902 F.2d 55, 58 (D.C. Cir. 1990)); see also United States v. Arteca 411 F.3d 315, 322 (2d Cir. 2005) (noting district court's conclusion that "evidence of weakness in the government's case might have been one

means of proving that [petitioner] would have gone to trial").

Here, Cuevas has provided no basis at all to believe that there was some rational reason for him to have gone to trial in this case rather than to have pled guilty, assuming he had been adequately advised. Cuevas gives no explanation of why the Government's evidence at trial would have given him a fair chance at acquittal. Nor does he reveal his own defenses or explain what witnesses or other evidence were available to him to support his defenses or counter the Government's case. For this reason alone, we have no reason to credit his assertions that had he been advised differently regarding the plea, he would have concluded that going to trial was the preferred course of action. See, e.g., Hernandez v. United States, 2010 WL 1558559, at *11 (S.D.N.Y. Apr. 19, 2010) (rejecting ineffective assistance argument where petitioner "provides no actual or objective evidence that would support his assertion that but for [his attorney's] purported errors, he would have taken his case to trial").

Moreover, Cuevas's prejudice argument rests on his assumption that he could not have received more than a 30-year sentence had he gone to trial. Cuevas states:

> Petitioner was prejudiced by counsel's failure to negotiate a plea because the petitioner did not face a Life sentence as counsel lead the petitioner to believe based on the Treaty with the Dominican Republic. Petitioner would have proceeded to trial and not accepted the plea had counsel made him aware of the negotiation process
>
> Because the petitioner could have only received the same thirty year sentence or not been found guilty of the whole indictment and received less. [sic]

Supp. Reply at 22-23. In other words, Cuevas argues that it was rational for him to proceed to trial because his sentencing exposure was capped at 30 years. As already explained, however, that assumption was wrong. Thus, Cuevas has provided no reason at all why it would have been rational for him to proceed to trial.

The cases that Cuevas cites in support of his argument that he was prejudiced do not suggest a different result. For example, Cuevas cites to <u>Thomas v. United States</u>, 951 F.2d 902 (8th Cir. 1991), to support his contention that "[p]rejudice is manifest, because had counsel performed to the standards required by [l]aw, petitioner would have gone to trial." Am. Mot. at 22. However, in <u>Thomas</u>, the court found that the allegations did not "support a finding of ineffective assistance [of counsel], even if true, because [petitioner] cannot establish a reasonable probability that he would have gone to trial had counsel thoroughly investigated the case." 951 F.2d at 905. Here, as was true in <u>Thomas</u>, Cuevas has failed to show a reasonable probability that he would have gone to trial but for counsel's alleged deficiencies.

The fact that Cuevas was certain to be deported following a guilty plea does not, without more, constitute "objective evidence" that it would have been rational for him to go to trial. In the absence of a showing that there was some possibility of acquittal, Cuevas would never have been a free man in the United States no matter what course of action he chose. In the end, Cuevas, who was actually living in the Dominican Republic at the time of his extradition, has not provided any reason to believe that his risking a life sentence – or at best a lengthy sentence followed by deportation – would have been an objectively rational choice for him to make. <u>See</u>, <u>e.g.</u>, <u>Matos</u>, 2012 WL 569360, at *4 ("A conviction after trial would, in all likelihood, ensure that [petitioner] was imprisoned for a significant term of incarceration before facing the same immigration consequences. Given these circumstances, it would have been irrational for [petitioner] to proceed to trial."); <u>see generally</u> <u>Shef v. United States</u>, 2007 WL 812104, at *5 (E.D.N.Y. Mar. 13, 2007) (rejecting petition where defendant failed to "put forward any convincing evidence that could establish that there was a reasonable probability that, had he been differently advised as to the immigration consequences [of his plea], he would have forgone the

plea offer and proceeded to trial").

IV.    CONCLUSION

For the foregoing reasons, the petition should be denied.

**PROCEDURE FOR FILING OBJECTIONS TO THIS
REPORT AND RECOMMENDATION**

Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil

Procedure, the parties have fourteen (14) days including weekends and holidays from service of

this Report and Recommendation to serve and file any objections. See also Fed. R. Civ. P. 6(a),

(b), (d). Such objections (and any responses to objections) shall be filed with the Clerk of the

Court, with copies sent to the Hon. Paul A. Engelmayer, and to the undersigned, at 500 Pearl

Street, New York, New York 10007. Any request for an extension of time to file objections

must be directed to Judge Engelmayer. If a party fails to file timely objections, that party will

not be permitted to raise any objections to this Report and Recommendation on appeal. See

Thomas v. Arn, 474 U.S. 140 (1985); Wagner & Wagner, LLP v. Atkinson, Haskins, Nellis,

Brittingham, Gladd & Carwile, P.C., 596 F.3d 84, 92 (2d Cir. 2010).


Dated: August 16, 2012
       New York, New York


                                        _____
                                        GABRIEL W. GORENSTEIN
                                        United States Magistrate Judge

Copies sent to

Juan Cuevas
Fed No. 25329-069
F.C.I. Allenwood
P.O. Box 2000
White Deer, PA 17887

Carrie H. Cohen
U.S. Attorney's Office, SDNY
One St. Andrew's Plaza
New York, NY 10007

plea offer and proceeded to trial").

IV.    CONCLUSION

For the foregoing reasons, the petition should be denied.

**PROCEDURE FOR FILING OBJECTIONS TO THIS
REPORT AND RECOMMENDATION**

Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil

Procedure, the parties have fourteen (14) days including weekends and holidays from service of

this Report and Recommendation to serve and file any objections. See also Fed. R. Civ. P. 6(a),

(b), (d). Such objections (and any responses to objections) shall be filed with the Clerk of the

Court, with copies sent to the Hon. Paul A. Engelmayer, and to the undersigned, at 500 Pearl

Street, New York, New York 10007. Any request for an extension of time to file objections

must be directed to Judge Engelmayer. If a party fails to file timely objections, that party will

not be permitted to raise any objections to this Report and Recommendation on appeal. See

Thomas v. Arn, 474 U.S. 140 (1985); Wagner & Wagner, LLP v. Atkinson, Haskins, Nellis,

Brittingham, Gladd & Carwile, P.C., 596 F.3d 84, 92 (2d Cir. 2010).


Dated: August 16, 2012
      New York, New York

                                             GABRIEL W. GORENSTEIN
                                             United States Magistrate Judge

21